UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RODERICK GREER TALLEY                                              PLAINTIFF

VS.                              CIVIL ACTION NO. 3:24-cv-296-TSL-ASH

JACKSON STATE UNIVERSITY
AND ERIC STANTON                                                 DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on plaintiff Roderick Greer Talley's Emergency Motion for Preliminary Injunction and Temporary Restraining Order[1] and his related Motion to Strike the response by defendants Jackson State University (JSU) and Eric Stanton to his motion for preliminary injunction. The court, having considered the motions, concludes that both should be denied.

<u>Background Facts</u>

During the 2022-2023 school year, plaintiff Roderick Talley was in his senior year of college at JSU, expecting to graduate in May 2023. On March 23, 2023, Talley, accompanied by a female companion, LaQuita Jones, drove from his home in Durant to the JSU campus to attend class. His companion was a high-school senior who was considering attending JSU in the Fall and Talley wanted

---

[1] Although plaintiff's motion refers to a "temporary restraining order," what he is requesting is only a preliminary injunction. Also, no apparent "urgency" or "emergency" is presented.

1

her to tour the campus and get a feel for what college was like at JSU. Once they arrived on campus, an altercation ensued between them which became physical and led to Jones' making a written statement to campus police describing what amounted to assault. She wrote: "[H]e got physical with me and removed me from the truck very violently[.] [H]e grabbed me with both hands and pushed me from the truck, he was so strong my feet literally was off the ground from how hard he grabbed me." Based on Jones' statement, defendant Eric Stanton, a JSU police officer, arrested Talley for assault when Talley went to the campus office later that day looking for Jones. In a search incident to the arrest, Stanton found in the backpack Talley was carrying a handgun and clip with twenty-four rounds of ammunition.

As is pertinent here, Talley was jailed on charges of simple assault and possession of a firearm on University property and held in jail until his initial appearance several days later. Based on these events, Talley was referred to JSU's Dean of Students Office for violation of JSU's code of conduct. By letter dated April 2, Talley was notified of the charges against him, including Conduct Rule 4.45 relating to "[a]ctions or activities, on or off-campus, that violate criminal law," and Student Conduct Rule 4.50, which "strictly prohibits" "[t]he use, storage,

possession, or display of weapons [or] firearms ... on the premises of the University." The letter advised that a disciplinary hearing had been set for April 6 before the Student Affairs Conduct Committee (Committee), at which Talley would be allowed to provide his account of the incident.

At the April 6 hearing, Jones appeared and was asked two questions by Committee members, whether she knew if Talley owned a firearm and whether she was aware he was found in possession of a weapon on March 23 while at JSU, to both of which she responded "yes." Jones was then excused from the hearing.

Talley was again informed of the charges and asked to share his version of the incident that occurred. In questioning by Committee members, he admitted he owned a gun and that he had been found in possession of a gun at JSU but claimed that the arrest was illegal and that evidence of the gun, obtained in violation of his right to privacy, could not be used to discipline him.

Following the hearing, the Committee notified Talley, in writing, of the hearing officers' decision that he had violated the referenced rules of conduct, for which he was suspended for two years, through the end of the spring 2025 semester. He was advised of his right to appeal the decision for either of both of

two reasons: "(1) Substantial violation of the hearing procedure," and "(2) New evidence witnesses or facts."

Talley submitted his appeal on April 10, in which he argued that the record was "devoid of any evidence that [he] knowingly brought, carried, or kept a weapon of firearm on school property," and further claimed that the hearing violated JSU's policies and the Constitution's guarantee of due process in myriad ways, including that he was merely informed of the violation but not provided any evidence or statements alleging a violation; he was not allowed to explain any evidence or ask questions of his accuser; "JSU did not investigate the totality of the complaint against [him] *de novo*" and instead, demonstrated that it "intended to rely on Stanton's partial [false] statement [in relation to the simple assault]"; and the Committee "failed to ask [him] if he knowingly and/or intentionally had possession of the weapon." His appeal was denied by the Student Affairs Appeal Committee, which wrote, "Based on [its review of the appeal request], it was determined through the student conduct hearing testimony that you admitted to having knowledge of the firearm and ammunition being in the backpack in the Public Safety headquarters. Additionally, the backpack was in your possession. As a result, the original decision is being upheld."

The next day, April 11, 2023, Talley, proceeding pro se, filed suit in this court against JSU, Stanton and others, including members of the Committee, alleging an assortment of state and federal claims relating to his arrest and suspension, including that his state-created right to a public education was violated when he was suspended for "allegedly bringing a weapon to school without finding that he did so knowingly." Talley v. Jackson State Univ., et al., Civ. Action No. 3:22cv252-HTW-LGI. Contemporaneously, he moved for a temporary restraining order and preliminary injunction prohibiting JSU from enforcing its order to suspend him and ordering JSU to permit him to participate in commencement exercises and to issue him a diploma upon successful completion of his classes if his classwork could not be completed prior to commencement exercises. At an April 27, 2023 hearing on the motion before Judge Henry Wingate, Talley admitted in his testimony that when he was arrested, he was in possession of a weapon, but he maintained that he did not know at the time that the gun was in his backpack and learned only later that Jones had placed it in his backpack without his knowledge. Talley presented testimony at the hearing from Jones, who testified, *inter alia*, that she had put the gun in the backpack without Talley's

knowledge.[2]  At the conclusion of the hearing, Judge Wingate made

a ruling from the bench denying the requested relief.  However,

before an order memorializing his findings and conclusions was

prepared and entered, Talley voluntarily dismissed the lawsuit.

Talley was later tried and found guilty in justice court on

the charge of simple assault.  He appealed to the County Court of

Hinds County, and on October 6, 2023, following a bench trial, he

was found guilty and was sentenced to six months in jail,

suspended, six months' probation and a $500 fine.  The matter was

placed in non-adjudication status, with a directive that it would

be expunged upon successful completion of the sentence.  Talley

advises that he is currently pursuing petitions for post-

conviction relief relating to his conviction.[3]  Talley was

indicted for possession of a weapon on educational property, in

violation of Mississippi Code § 97-37-17.  He was tried before a

jury, which on April 3, 2024, returned a verdict of "not guilty."

---

[2]    Under questioning by defense counsel and Judge Wingate, it
was revealed that over time, Jones had given multiple inconsistent
accounts relating to putting the gun in the backpack and as to the
altercation that led to Talley's arrest, leading Judge Wingate to
find that her credibility was beyond rehabilitation.

[3]    Talley has also filed a lawsuit in this court against the
justice court judges, county court judge and prosecutor, alleging
numerous charges of misconduct and violation of his civil rights
in connection with the prosecution and trials of the assault
charge.  See Talley v. Mumford, et al., Civ. Action No. 3:24cv323-
KHJ-MTP.

Talley filed the present action on May 22 against JSU and
Eric Stanton, alleging numerous claims, including federal claims
under 42 U.S.C. § 1983 for violation of his Fourth Amendment right
to be free from unreasonable search and seizure (Count I) and
violation of his Fourteenth Amendment right to due process (Count
II), and contemporaneously moved for a preliminary injunction to
"prevent enforcement of a two-year suspension," reinstate him to
his original status before the suspension, allow him to complete
his degree and participate in graduation ceremonies, and also to
prevent "Defendants from any further actions that violate [his]
due process rights."

Motion to Strike and for Sanctions

In his motion for a preliminary injunction, Talley failed to
mention his prior lawsuit against JSU, including the fact that
Judge Wingate had denied his motion seeking essentially the same
preliminary injunction that he seeks by his present motion.
Defendants, on the other hand, did address the prior litigation in
their response, along with numerous other matters that Talley
finds objectionable.  Talley has thus filed a "Motion to Strike in
Opposition of Defendants' Motion & Brief in Opposition to
Plaintiffs' Second Motion for Preliminary Injunction and Temporary
Restraining Order."  In this motion, plaintiff requests that the

7

court strike "Defendants' entire Motion, Brief, and Exhibits in Opposition to Plaintiff's Second Motion for Preliminary Injunction and Temporary Restraining Order and impose sanctions against Defendants' counsel for their misconduct" in "presenting a brief replete with inaccuracies, improper references, and misleading statements," in violation of Rule 11.  He also moves specifically to strike and bar from use the transcript of his criminal trial in county court, filed as an exhibit to defendants' response, on the basis that the county court judge "lacked jurisdiction [so that] the case is perceived to have never happened."  Plaintiff's motion to strike and for sanctions is without merit and will be denied.

In their response to the preliminary injunction motion, defendants, citing the county court transcript, note that Jones testified at Talley's trial in county court that the original report/statement she provided JSU police that led to Talley's arrest on assault charges was, in fact, true, and that a retraction document she later signed was not true, and that Talley had prepared the retraction document and asked her to present it to the court as though she had written it.[4]  In the court's

_____

4    This relates to a March 31, 2023 statement signed by Jones and notarized in which she claimed that her original statement to police regarding the altercation with Talley whereby she claimed he had gotten physical with her had not been accurate.

opinion, Talley's contention that the county court was without jurisdiction is not well founded.[5]  However, regardless of whether the court had jurisdiction, the record of that action, including Jones' sworn testimony, nevertheless exists and is admissible in this action.

On somewhat similar reasoning, Talley argues that defendants have "erroneously assert[ed] that this is his second motion" for a preliminary injunction.  He contends that because he voluntarily dismissed the prior lawsuit, that case is "considered null and void, rendering Defendants' reliance on it legally improper."  He is mistaken.  It is true that the Fifth Circuit has stated that "[t]he rule in the federal courts is that the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) is to render the proceedings a nullity and leave the parties as if the action had never been brought."  Thompson v. Greyhound Lines, Inc., 574 Fed. Appx. 407, 409 (5th Cir. 2014) (quoting Bonneville

---

5    Talley argues the county court lacked jurisdiction over his appeal because he never paid the cost bond required by Mississippi Code § 99-35-1 after his motion to appeal in forma pauperis (ifp) was "deemed" denied.  However, the Mississippi rule on denial of post-trial motions by operation of law, by its terms, applies only to "motion[s] for a new trial or … motion[s] to vacate judgment" filed in the trial court.  Miss. R. Crim. P. 25.3.  Plaintiff filed his ifp motion and supporting financial affidavit in the appellate (county) court, which evidently accepted his affidavit and allowed him to proceed ifp.

Associates, Ltd. P'ship v. Barram, 165 F.3d 1360, 1364 (Fed. Cir. 1999)); see also Taylor v. Bunge Corp., 775 F.2d 617, 619 (5th Cir. 1985) (stating that the effect of a Rule 41(a) dismissal "was to put the plaintiff in the same legal position in which he would have been had he never brought the first suit."). Courts have applied this principle in relation to issues of appealability or the legal viability of a subsequent action. See, e.g., Taylor, 775 F.2d at 619 (action that plaintiff voluntarily dismissed does not toll the statute of limitations); Thompson, 574 Fed. Appx. at 408 (commencement and termination by voluntary dismissal of prior lawsuit had "no bearing" on existence of diversity jurisdiction in later-filed case); Williams v. Clarke, 82 F.3d 270, 273 (8th Cir. 1996)(no appellate jurisdiction over action terminated by voluntary dismissal). However, "there is no rule that makes all voluntarily dismissed cases absolutely null for all purposes." Pacific Mut. Life Ins. Co. v. First RepublicBank Corp., 997 F.2d 39, 44 (5th Cir. 1993), vacated on other grounds, 53 F.3d 1409, 1410 (5th Cir. 1995) (explaining that language in cases that the effect of a voluntary dismissal is to "put the plaintiff in the same legal position in which he would have been had he never brought the first suit" does not apply "irrespective of the reasons for and context in which we used it, to hold that [the

10

voluntarily dismissed] suit vanished upon voluntary dismissal."). Given that it was voluntarily dismissed, Talley's prior lawsuit did not result in a final judgment and Judge Wingate's ruling on plaintiff's motion for a preliminary injunction has no preclusive effect. But the fact that the prior action, having been voluntarily dismissed, is of no legal effect does not mean that the prior litigation is factually irrelevant in this case. The testimony offered at the hearing is relevant, and Judge Wingate's ruling, while not binding on the undersigned, is also relevant.

On a related point, plaintiff's challenge to defendants' "erroneous references to previous decisions by another judge" is wholly unfounded. Although he correctly contends that "different judges may reach different conclusions based on the same facts" (unless a preclusion doctrine applies), his further assertion that proof of Judge Wingate's ruling somehow undermines the "need for independent judicial evaluation in [this] case, free from the influence of prior decisions in unrelated matters," is misguided, at best. Contrary to his characterization, his prior lawsuit obviously is not unrelated. Moreover, even when not bound by prior decisions, judges, in general, in evaluating cases before them, undertake to be informed of and take into consideration how other judges have ruled or the views they have expressed on the

same or similar facts/issues, particularly in related cases.  Such
knowledge contributes to sound decision-making and is not
antithetical in the least to judicial independence.[6]

None of the foregoing positions asserted by Talley has merit,
and he has otherwise identified nothing that even remotely
suggests any violation by defense counsel of Rule 11 or that might
otherwise even arguably warrant consideration of sanctions against
defense counsel.[7]  Accordingly, the motion to strike will be
denied.

Motion for Preliminary Injunction

---

[6]   That said, the undersigned is of the opinion that Judge
Wingate's ruling was correct and his reasoning was sound.  And
this court would be warranted in merely adopting his ruling since
so far as the court is aware, the pertinent facts have not
changed, except that Talley was convicted on the simple assault
charge, which further conclusively confirms there was probable
cause for the arrest.  On the other hand, Talley was acquitted on
the gun possession charge, which he purports to believe is highly
relevant in this case.  The court thus assumes that this is the
reason for Talley's delay in bringing the present motion.  That
is, he was awaiting the outcome of the criminal charge because he
believed an acquittal would establish or tend to establish his
claim(s) in this case.  However, so long as the Committee provided
Talley a fair opportunity to defend against the charges, it was
entitled to base its decision on the information before it at the
time of the disciplinary proceedings, which did not include
Talley's claim that he did not know the gun was in his backpack.
[7]   The balance of Talley's motion to strike is what the court
construes to be Talley's substantive reply to defendants' response
to the motion, which the court will accept and treat as such,
notwithstanding that it was not timely filed.

The court has determined that a hearing on plaintiff's motion for a preliminary injunction is unnecessary as the *material* facts are not in dispute.  See Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996) (explaining that, in the absence of a factual dispute, "no oral hearing is required; ... the parties need only be given ample opportunity to present their respective views of the legal issues involved.") (quotation omitted).  The record evidence is comprehensive and includes both documentary evidence of the parties' actions and decisions relating to the challenged disciplinary procedure and the sworn testimony of Talley (and Jones) from two separate court actions.  Further, the parties have adequately presented their positions; nothing would be gained from additional argument on the issues.

Turning, then, to the merits of the motion, a party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.  Nichols v. Alcatel USA, Inc., 532 F.3d 364, 372 (5th Cir. 2008).  A preliminary injunction is "an extraordinary

13

remedy" which should only be granted if the plaintiff has "clearly carried the burden of persuasion on all four requirements."  Id. If he fails to establish even one element, his motion fails.

Regarding the first element, Talley declares that he is likely to succeed on the merits of his claims because "the unlawful arrest, search, and seizure conducted by Defendant Stanton, along with procedural deficiencies in the procedural process" that led to his suspension violated his constitutional rights under the Fourth and Fourteenth Amendments.  The court finds and concludes that, on the contrary, he is not likely to succeed on any of these claims.

Fourth Amendment: Unreasonable Search and Seizure

An arrest without probable cause violates the Fourth Amendment.  See United States v. Castro, 166 F.3d 728, 733 (5th Cir. 1999) (en banc) ("It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause.").  Probable cause for a warrantless arrest exists when the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  Piazza v. Mayne, 217 F.3d 239, 245-46 (5th Cir. 2000)

14

(quoting <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L.Ed.2d 343 (1979)).  "Critically, 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity'"; it is "'not a high bar.'" <u>Loftin v. City of Prentiss, Miss.</u>, 33 F.4th 774, 780 (5th Cir. 2022) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13, 76 L. Ed. 2d 527 (1983), and then, <u>Kaley v. United States</u>, 571 U.S. 320, 338, 134 S. Ct. 1090, 1103, 188 L. Ed. 2d 46 (2014)).  The determination whether probable cause exists is made by reference to "the events leading up to the arrest," that is, the "historical facts" known the officer, and not on subsequent events or information.  <u>Id.</u>

Defendant Stanton clearly had probable cause to arrest Talley for simple assault based on Jones' statement that Talley had "violently pushed her" from the truck and "grabbed her" so hard that her feet were "literally off the ground."  The fact that Jones later withdrew her original statement has no bearing on the lawfulness of the arrest.  As the arrest was lawful, it follows that Talley cannot succeed on his claim that the search of his backpack was illegal.  <u>See</u> <u>Arizona v. Gant</u>, 556 U.S. 332, 339, 129 S. Ct. 1710, (2009) (search undertaken pursuant to search incident

15

to arrest exception to warrant requirement may include arrestee's person and area within his immediate control).

Fourteenth Amendment:  Due Process

The Fourteenth Amendment's due process clause has two components, procedural and substantive.  The procedural component guarantees procedural protections when a state seeks to deprive an individual of protected liberty or property interests.  Jordan v. Fisher, 823 F.3d 805, 810 (5th Cir. 2016).  The substantive component "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."  Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (quotation omitted).

Substantive Due Process

Education has not been recognized as a fundamental right under the Constitution, and thus, the test for determining whether a plaintiff's substantive due process rights have been violated is whether the government action is rationally related to a legitimate government interest.  San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 38-40, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973).  JSU's student conduct rule purports to prohibit the "use, storage [or] possession" of a weapon on campus without regard to

16

whether possession was "knowing."  The Sixth Circuit held in Seal v. Morgan, that "suspending or expelling a student for weapons possession, even if the student did not knowingly possess any weapon, would not be rationally related to any legitimate state interest."  229 F.3d 567, 575 (6th Cir. 2000).  Relying exclusively on Seal, Talley argues that JSU violated his substantive due process rights when it suspended him despite the absence of evidence that he *knowingly* possessed the weapon that was found in his backpack.  He points to the transcript of the student conduct hearing, which he says shows that he did not admit to knowing a weapon was in his backpack and that Committee members never asked him if he knew the gun was in his backpack.  He insists that "knowing possession" was an essential element of the charge and that his lack of awareness of its presence in his backpack was "a crucial point."

Even assuming for the sake of argument that Talley is correct and that under substantive due process principles, proof of knowledge was required (a position about which the court expresses no opinion at this time), Talley has not demonstrated that the evidence presented at the hearing failed to establish that his possession was knowing.  During the hearing, Talley expressly admitted that he possessed the gun and ammunition on University

property, and despite being given ample opportunity to do so, he never once claimed or so much as intimated that he did not know the gun was in his backpack.  Certainly, if he lacked such knowledge, one would have expected that he would assert a lack of knowledge in defense of the charge.  A reasonable inference – and probably the most reasonable inference - from the fact that he did not do so, was that he knowingly possessed the gun.  Cf. Marsh v. Delaware State Univ., No. Civ. A. 05-00087JJF, 2006 WL 141680, at *5 n.3 (D. Del. Jan. 19, 2006) (circumstances of case did not resemble Seal where plaintiff made no "argument regarding knowing possession and the evidence indicated that the University based its decision, at least in part, on the fact that Plaintiff admitted possessing the bullet recovered among his belongings").  Thus, Talley is not likely to succeed on the merits of a substantive due process claim.

Procedural Due Process

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d (1976)).  While "Due Process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct," the student "is not entitled

18

to the 'opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident.'" Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 158 (5th Cir. 1961) (quoting Flaim v. Med. Coll. of Ohio, 483 F.3d 629, 634 (6th Cir. 2005)). The amount of process due depends on (1) the student's interest that will be affected; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the university's interests, including the burden that additional procedures would entail. Mathews, 424 U.S. at 335, 96 S. Ct. 893.

Talley claims JSU deprived him of the opportunity to "present his case" or "defend himself" because he was not "provide[d] documents, reports, audio, or video prior to the hearing or at the appeal stage" or allowed to question his accusers and witnesses or present his own witnesses. Talley has never denied that he possessed a gun on campus, not then and not now. The only two defenses he has identified are that (1) because the gun was discovered as the result of an illegal arrest, it could not be used as a basis for disciplinary action, and (2) he did not know the gun was in his backpack. The first, which he did argue in his

19

disciplinary hearing, was not a valid defense.  See infra at pp. 21-22.  The second, he could have presented but affirmatively chose not to do so.

During the hearing, Talley was asked to share his version of events.  His response focused exclusively on his claim that the arrest was illegal and that consequently, evidence of the gun could not be used against him.  He claimed:

> What was on my person should have not been able to be searched by campus police because the initial arrest was illegal and invalid and it was based on lack of probable cause.  So, therefore, as it relates to the Fruit of the Poisonous Tree Doctrine, y'all have – the gun that they recovered should not have been in their possession as it relates to them illegally searching me.

When asked if he had anything further to add, he merely reiterated his argument that officers had no right to search his backpack, and that if they had not searched his backpack, they would never have found the weapon.

In his sworn testimony before Judge Wingate, Talley stated that he deliberately chose not to inform the Committee that Jones had put the gun in his backpack without his knowledge because he did not want to "put [her] in the way."  That was why he decided to only "attack the credibility of the arrest, arresting officer, so that it wouldn't come to a situation where [Jones] had to be put in this situation."  That was a purposeful choice on his part.

He now complains that he was never asked by Committee members if he knew the gun was in the backpack, but they had no obligation or reason to do so; he admitted he possessed the gun and made no suggestion that he was unaware of the its presence.  He similarly complains both that Committee members did not ask Jones whether he knew the gun was in the backpack and that he was not allowed to question her himself.  Neither was required; and in any event, based on his testimony before Judge Wingate, it is evident that even if he had been allowed to cross-examine Jones, he would not have asked her whether he knew the gun was in the backpack.

Talley's contention that his due process rights were violated by JSU's failure to provide him with evidence against him prior to the hearing, or at the appeal stage, evidently refers to evidence relating to the assault charge, which he presumably intended to use at the hearing in furtherance of his fruit-of-the-poisonous-tree argument by showing, through cross-examination of witnesses or otherwise, that there was insufficient evidence to create probable cause for his arrest.  This would have been a futile endeavor, however, both because there was clear probable cause based on Jones' statement to campus police and because the exclusionary rule does not apply in a school disciplinary hearing. See Thompson v. Carthage Sch. Dist., 87 F.3d 979, 982 (8th Cir.

1996) (stating that "the exclusionary rule may not be applied to prevent school officials from disciplining students based upon fruits of a search conducted on school grounds."); Medlock v. Trustees of Indiana Univ., No. 1:11-cv-00977-TWP-DKL, 2013 WL 1309760, at *7 (S.D. Ind. 2013) (finding that use of evidence obtained from allegedly illegal search of student's dorm room did not violate student's due process rights, and observing that Supreme Court's holding that exclusionary rule does not apply in civil proceedings is "particularly applicable" where student "was suspended for violating university rules and regulations") (citing Penn. Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363-64, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998)).

Finally, Talley points to an e-mail sent by Jones to deanofstudents@jsums.edu after Talley was notified of his suspension, in which she wrote that she had wanted to tell the Committee that she knew Talley had the gun because it was in his truck that morning and she "didn't like to see it lying out"; and she stated that because of their altercation, she had forgotten to tell him she had done this. But at no time did Talley deny knowledge of the gun.[8]

---

[8]   Notably, as well, the student conduct rule he was charged with violating prohibits *storage* or possession of a weapon *on campus*; the truck was on campus.

In sum, given the record evidence, Talley cannot demonstrate a likelihood of success on the merits of his claim that he lacked notice of the charges or was not afforded a fair opportunity to respond to the charges and to defend and explain himself, as due process requires.

The court could go further and explain, as defendants have aptly done, the reasons Talley has not sustained his burden to prove the remaining factors necessary for securing a preliminary injunction; but it is unnecessary to do so since the failure of proof on the first element is alone sufficient to warrant denial of the motion.

<u>Conclusion</u>

Based on the foregoing, it is ordered that plaintiff's motion for preliminary injunction or a temporary restraining order and his motion to strike are denied.[9]

SO ORDERED this 5th day of July, 2024.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[9]    Talley has recently filed a motion for expedited discovery in connection with the motion for preliminary injunction.  For the reasons stated herein, he has not established a likelihood of success on the merits, and no amount of discovery ostensibly seeking evidence of "a pattern of misconduct by JSU Public Safety Officers" or, more broadly, "violations of Plaintiff's constitutional rights" would serve to alter the pertinent facts of the court's conclusion herein.  His motion for expedited discovery is, therefore, denied.